TO: Clerk's Office
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**



APPLICATION FOR LEAVE
TO FILE DOCUMENT UNDER SEAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In the Matter of the Search of the Cellular
Telephone Assigned Call Number
646-592-0698

20-MC-2628
Docket Number

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUBMITTED BY: Plaintiff____ Defendant____ DOJ ✓
Name: Robert M. Pollack
Firm Name: USAO-EDNY
Address: 271-A Cadman Plaza East
Brooklyn, NY 11201
Phone Number: 718 254 6232
E-Mail Address: robert.pollack@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES____ NO ✓
**If yes, state description of document to be entered on docket sheet:**

**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered:_____
Judge/Magistrate Judge:_____
Date Entered:_____

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

All Writs Act: integrity of ongoing investigation, avoidance of destruction of evidence

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED: Brooklyn , NEW YORK
November 3, 2020
_Steven M. Gold USMJ_

**U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE November 3, 2020
DATE

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation:_____; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns. (Check one)

November 3, 2020
DATE                    SIGNATURE

AB:RMP
F. #2020R01003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED WITH 646-592-0698, THAT IS IN THE CUSTODY OR CONTROL OF VERIZON WIRELESS | **TO BE FILED UNDER SEAL**<br><br>APPLICATION FOR A SEARCH WARRANT FOR PROSPECTIVE AND HISTORICAL CELL SITE INFORMATION<br><br>Case No. 20-MC-2628 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, JENNIFER CARDILLO, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular device assigned with 646-592-0698 ("the SUBJECT ACCOUNT"), with listed subscriber(s) not known, that is in the custody or control of VERIZON WIRELESS, a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. As a provider of wireless communications service, VERIZON WIRELESS is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require VERIZON WIRELESS to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

4. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since 2014. I have been involved in the investigations of numerous cases involving Hobbs Act robberies and related firearms offenses. Through my training, education and experience, I have become familiar with the manner in which evidence of robberies is commonly stored and the manner in which fugitives hide, as well as the uses and capabilities of cellular phones. I have also participated in the execution of search warrants involving evidence of robberies, including searches of electronic evidence.

5. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951 have been committed and will be committed by Subject-1. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

7.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; see 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8.      The United States, including the ATF, is conducting a criminal investigation of Subject-1 and unidentified accomplices regarding an ongoing pattern of Hobbs Act robberies in violation of 18 U.S.C. § 1951.

9.      Specifically, we are investigating a pattern of at least ten commercial robberies that have been committed in New York City, most of them in Brooklyn, between approximately September 30, 2020 and October 26, 2020.  In each of these robberies, which are captured on surveillance videos that I have reviewed, one individual (Subject-1) who sometimes acts with at least one accomplice and sometimes acts alone, enters a commercial establishment, brandishes a firearm or simulates a firearm under clothing, and demands money or valuables from the establishment or from people within the establishment.  In the videos of most of the robberies, Subject-1 enters the establishment while holding what appears to be a cellphone up to his ear, and holds it there for some time before brandishing a firearm.  Based upon the clothing and appearance of the principal perpetrator that is visible in surveillance videos, and other details of his conduct in the pattern of robberies, it appears that Subject-1 was the principal perpetrator of each of the commercial robberies in the pattern.

10.     The October 26, 2020 robbery was committed at a gas station on Bedford Avenue in Brooklyn.  That robbery was captured on surveillance video, which I have reviewed, and Subject-1 is visible in the video committing the robbery and fleeing from the scene.  We have

also recovered other surveillance videos, which I have reviewed, that show Subject-1 in the neighborhood around the scene of the robbery, both before and after the robbery.

11. One surveillance video shows Subject-1 a few blocks from the scene of the robbery shortly before it occurred, speaking to the driver of livery cab ("Cab-1"), and then walking away from Cab-1. Cab-1 subsequently departs without Subject-1.

12. Another surveillance video shows Subject-1 fleeing from the scene of the robbery and getting on a particular city bus. We have traced the path of that bus and recovered other surveillance video that shows Subject-1 getting off of the bus several stops later and entering a particular bodega, wearing the same clothing and the same distinctive headscarf that he wore during the robbery.

13. Subject-1 is visible on surveillance video from that bodega with the headscarf, which had previously obscured his face, in his hand, and taking out a thick wad of money which appears to be the proceeds of the robbery committed a few minutes earlier, and using a cellphone.

14. Shortly thereafter, surveillance video captured the arrival of another livery cab ("Cab-2"), and Subject-1 departing in it.

15. Based on a partial license plate of Cab-1, which was visible in a surveillance video, we identified the vehicle and interviewed the driver. The driver indicated that he was called to that location by dispatch based on Subject-1's call, and Subject-1 told him to wait for a moment while he went back into the store, but Subject-1 made the driver uncomfortable so the driver left before Subject-1 returned.

16. Based on the records of the taxi dispatch company that dispatched that driver, the same telephone number was used to call for both Cab-1 and Cab-2. That phone number is the SUBJECT ACCOUNT.

17. I respectfully submit that there is probable cause to believe that Subject-1 carried the cellphone associated with the SUBJECT ACCOUNT to some or all of the commercial robberies in the pattern described above and will continue to carry it during additional robberies unless he is identified and arrested.

18. In my training and experience, I have learned that VERIZON WIRELESS is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

19. Based on my training and experience, I know that VERIZON WIRELESS can collect cell-site data on a prospective basis about the SUBJECT ACCOUNT. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the

telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as VERIZON WIRELESS typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

20. Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

21. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

22. Based on my training and experience, I know that wireless providers such as VERIZON WIRELESS typically collect and retain information about their subscribers in their

normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as VERIZON WIRELESS typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT ACCOUNT's user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the SUBJECT ACCOUNT, without geographic limit, for a period of thirty days (30) days pursuant to 18 U.S.C. § 3123(c)(1).

24. I further request that the Court direct VERIZON WIRELESS to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on VERIZON WIRELESS, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving the target an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
JENNIFER CARDILLO
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
by telephone on November 3, 2020

*Steven M. Gold USMJ*
_____
HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE